## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| GINEGAR, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>ORACLE CORPORATION,<br><br>*Defendant*. | Case No. 6:21-cv-00134<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Ginegar LLC ("Ginegar"), by and through the undersigned counsel, brings this action against Defendant Oracle Corporation ("Oracle"), alleging as follows:

### I.    INTRODUCTION

1.    This is an action by Ginegar against Oracle for infringement of U.S. Patent Numbers 8,146,091 (the "'091 Patent") and 6,898,783 (the "'783 Patent"), collectively referred to as "the Patents-in-Suit."

### II.    THE PARTIES

2.    Plaintiff Ginegar is a California corporation with its principal place of business at 2160 Century Park East #707, Los Angeles, California 90067. Ginegar is the assignee and owner of the Patents-in-Suit.

3.    Upon information and belief, Defendant Oracle Corporation is a Delaware corporation with its principal place of business, and world headquarters, at 2300 Oracle Way, Austin, Texas 78741.

### III.   JURISDICTION AND VENUE

4.     This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     This Court has personal jurisdiction over Oracle because Oracle has a principal place of business is in this District and because it continuously and systematically conducts business in this District, including the manufacture and distribution of the products at issue in this suit.

7.     Venue is proper in the Western District of Texas under 28 U.S.C. §§ 1391(b) and 1400(b) because Oracle has its principal place of business in this District at 2300 Oracle Way, Austin, Texas 78741 and because a substantial part of the events and omissions giving rise to the claims at issue occurred here, including the use or sale of the infringing products.

### IV.   FACTUAL BACKGROUND

**The '091 Patent**

8.     The '091 Patent, entitled "Expansion and Contraction of Logical Partitions on Virtualized Hardware," was issued by the United States Patent and Trademark Office on March 27, 2012. A true and correct copy of the '091 Patent is attached as Exhibit A.

9.     Ginegar is the owner of the entire right, title and interest in and to the '091 Patent.

10.    The '091 Patent claims methods, apparatuses, and a program product for managing the resources of a logically partitioned computing system with an application level administrative console.

11.     A computing system may be logically partitioned so that it can run a plurality of operating environments in a corresponding plurality of logical partitions, with each logical partition being allocated a portion of the computing resources (e.g., CPU, RAM, storage, etc.).

12.     The '091 Patent addressed a problem that existed with resource allocation in logically portioned computing systems. At the time of the invention, logical partitions generally remained static after configuration and adjusting the resources allocated to the logical partitions was time consuming, laborious, and required an Information Technology professional. As the needs of an operating environment or the software running in the operating environment typically vary over time, this resulted in inefficient use of computing resources, with some logical partitions having inadequate resources to meet the user's needs while other resources in the computing system are unused or underutilized.

13.     Among other things, the '091 Patent teaches a method for managing computing resources (e.g., CPU, RAM, Storage, etc.) in a logically partitioned computing system using an application level administrative console resident within a logical partition. A user request to adjust the allocation of at least a portion of the resources using the administrative console is received. The resources to adjust in order to satisfy the user request are determined using the application administrative console, and the console accesses the partition manager through a resource allocation interface to adjust the determined resources of the logically partitioned computing system in order to satisfy the user request.

**The '783 Patent**

14.     The '783 Patent, entitled "Object Oriented Based Methodology for Modeling Business Functionality for Enabling Implementation in a Web Based Environment," was issued by the United States Patent and Trademark Office on May 24, 2005. A true and correct copy of the '783 Patent is attached as Exhibit B.

15.     Ginegar is the owner of the entire right, title and interest in and to the '783 Patent.

16.     The inventions disclosed in the '783 Patent relate to a method for defining business functionality in an electronic format, and more particularly relate to an object oriented based methodology for modeling business functionality so as to generate hardware and software specific code therefrom for implementation in a web based computing environment.

17.     At the time of the invention, prior art taught the use of Objected-Oriented Programming ("OOP"), characterized by reliance on reusable, self-contained, callable program code modules known as "objects," which are designed to accomplish a predefined set of operations through "methods" and associated data.

18.     However, while an object's attribute value could indicate a logical state of the object and an object's methods could contain the universe of functions which may be invoked pursuant to the operation of the object, prior art lacked a methodology by which OOP can bind within the structure of an object, an object's state to its methods.

19.     This presented serious shortcoming, particularly given the proliferation of internet-based applications, as the internet is a "stateless" environment where each client request sent from web browser to application server is perceived by the server to be a unique event and not part of a continuous dialogue.

20.     Further, methods such as cookies that sought to address this problem by sending, in essence, discrete packets of information appended to client and server communications had their own set of problems, as they led to data bottlenecks and required additional processing power.

21.     The methods taught by the '783 Patent addressed the need for a method of designing architected computer systems for carrying out business that does not suffer from these limitations of the prior art.

22.     The invention of the '783 Patent provides a methodology that allows for translation of business processes into a computer defined structure. Such methodology allows for high level definition of the interaction of business units in a manner that is visually understandable, easy to edit, and from which computer code can be generated.

23.     In addition, the invention discloses a method by which business units are represented as carrying with them the complete state diagrams necessary to fully define their states and the methods or functions required to be performed to carry the business unit to the next logical state. Such a representation allows for communication in the stateless internet environment in a manner which maintains the context and state of data objects and thus overcomes the bottlenecks necessitated by the prior art.

24.     The '783 Patent also teaches a method for representing business activity using a graphical user interface (GUI) for linking Business Classes to generate relationships between one or more Business Classes and storing in memory the Business Classes and these relationships.

**The Oracle VM Server for SPARC**

25.     Oracle provides the Oracle VM Server for SPARC, which enables server virtualization and partitioning technology for SPARC V9 processors.

26.     The Oracle VM Server for SPARC is used to better utilize the SPARC servers by installing multiple operating system on multiple partitions (logical domains). It also manages the resources (i.e., CPU, Memory, etc.) that are allocated to various logical domains.

27.     Use of the Oracle VM Server for SPARC infringes at least claim 1 of the '091 Patent.

**The Oracle BPM Suite**

28.     Oracle also provides the Oracle Business Process Management (BPM)Suite.

29.     The Oracle BPM Suite is a set of tools for creating, executing, and optimizing business processes.

30.     These tools provide users a method of defining Business Classes and modeling business activity that infringes at least claim 1 of the '783 Patent.

<u>**CLAIM I**</u>
<u>**(INFRINGEMENT OF THE '091 PATENT)**</u>

31.     Ginegar repeats and realleges the foregoing allegations as if fully set forth herein.

32.     The '091 Patent is valid and enforceable.

33.     Oracle has infringed and continues to infringe, both directly and indirectly, at least claim 1 of the '091 Patent, either literally or under the doctrine of equivalents.

34.     Claim 1 of the '091 Patent recites:

A method of managing a plurality of resources of a logically partitioned computing system of the type that includes a plurality of logical partitions managed by a partition manager, wherein each logical partition is allocated at least a portion of the plurality of resources and has an operating system resident therein, the method comprising:

[1] maintaining resources that are not allocated to the plurality of logical partitions in a resource pool;

[2] receiving a user request to adjust the allocation of at least a portion of the plurality of resources using an application level administrative console that is resident within a logical partition in the logically partitioned computing system, that is disposed in an

application level above that of an operating system resident in such logical partition, and that includes an interface with a user;

[3] determining resources of the logically partitioned computing system to adjust in order to satisfy the user request using the application level administrative console; and

[4] utilizing the application level administrative console to access the partition manager through a resource allocation interface for the partition manager to adjust the determined resources of the logically partitioned computing system in order to satisfy the user request, wherein the user request is for the creation of a new logical partition and utilizing the application level administrative console further comprises:

[4A] identifying a logical partition profile to configure on the new logical partition;

[4B] allocating at least a portion of the resources in the resource pool to the new logical partition; and

[4C] migrating data from the logical partition profile to the new logical partition.

35.     At least use of the Oracle VM Server for SPARC directly infringes at least claim 1 of the '091 Patent.

36.     Regarding the preamble of claim 1, to the extent the preamble is determined to be limiting, use of the Oracles VM Server meets it. The preamble recites "[a] method of managing a plurality of resources of a logically partitioned computing system of the type that includes a plurality of logical partitions managed by a partition manager, wherein each logical partition is allocated at least a portion of the plurality of resources and has an operating system resident therein."

37.     According to information in the Enterprise Manager Ops Center User's Guide available on Oracle's website, the Oracle VM Server for SPARC technology "enables server virtualization on SPARC platforms. You can create and manage multiple virtual machine instances simultaneously on a single SPARC machine. Each virtual machine, or guest, can run a different operating                 system."                 *See*,                 *e.g.,*                 Exhibit                 C

(https://docs.oracle.com/cd/E18440_01/doc.111/e18415/chapter_vmsparc.htm#OPCUG342,  last

accessed February 1, 2021). It thus provides a way to "create and manage" a plurality of resources

of a logically partitioned computing system of the type that includes a plurality of logical partitions

managed by partition managers (multiple virtual machine instances that exist simultaneously on a

single SPARC machine), wherein each logical partition is allocated at least a portion of the

plurality of resources and has an operating system resident therein. Further, as described in the

User Guide, Oracle's technology "allows you to allocate a system's various resources, such as

memory, CPU threads, and devices" to create "discrete systems" with "their own operating system,

resources, and identity within a single system."

## 11 Oracle VM Server for SPARC

Oracle Solaris VM Server for SPARC technology, formerly known as Logical Domains or LDoms, enables server virtualization on SPARC platforms. You can create and manage multiple virtual machine instances simultaneously on a single SPARC machine. Each virtual machine, or guest, can run a different operating system.

With Enterprise Manager Ops Center, you can monitor and manage all of the virtual machines from a single browser user interface. You can use virtual pool technology to maximize capacity without overloading a server. To balance the load, you can move a virtual machine from one physical system to another system either automatically or manually, from the user interface.

In this release you can perform the following tasks:

- Provision the system to create Control Domain
- Reboot, and shut down the Oracle VM Server
- Monitor and interpret the performance of Oracle VM Server
- Create and provision logical domains
- Manage logical domains, including editing, migrating, starting, rebooting, and shutting down domains
- Monitor and interpret the performance of logical domain

### About Oracle VM Server for SPARC

You use hardware virtualization to create multiple virtual machines on a single piece of physical hardware. Unlike Oracle Solaris Zones, where the operating system is the same for each non-global zone, virtual machines can run on full instances of different operating systems, or different versions of the same operating system. These instances are called logical domains.

Oracle VM Server for SPARC technology, formerly known as Logical Domains or LDoms, is virtualization of SPARC servers. This technology is part of a suite of methodologies for consolidation and resource management for SPARC Chip Multi Threading (CMT) servers. This technology allows you to allocate a system's various resources, such as memory, CPU threads, and devices, into logical groupings and create multiple discrete systems. These discrete systems have their own operating system, resources, and identity within a single system. By careful architecture, an Oracle VM Server for SPARC environment can help you achieve greater resource usage, better scaling, and increased security and isolation.

When Oracle VM Server for SPARC software is installed, a domain called the control domain is created. From this control domain, you create virtual machines called logical domains that each run an independent OS. A logical domain is a virtual machine with resources, such as a boot environment, CPU threads, memory, I/O devices, and its own operating system. The control domain manages the logical domains. Each logical domain can be created, destroyed, reconfigured, and rebooted independently of other logical domains.

*See, e.g.,* Exhibit C. Thus, to the extent the preamble of claim 1 is limiting, it is met.

      38.      Use of the Oracle VM Server for SPARC also preforms the first listed step of claim

1, which requires "maintaining resources that are not allocated to the plurality of logical partitions

in a resource pool." The Oracle VM Server for SPARC 3.0 Administration Guide describes how

the Oracle VM Server for SPARC implements dynamic resource management, which keeps record of resources that are free in a pool (i.e., CPU resources that are not allocated to the logical partitions).

**Using Dynamic Resource Management**

You can use policies to determine how to automatically perform DR activities. At this time, you can only create policies to govern the dynamic resource management of virtual CPUs.

* * *

The behavior of the `priority` property depends on the availability of a pool of free CPU resources, as follows:

- **Free CPU resources are available in the pool.** In this case, the `priority` property determines which DRM policy will be in effect when more than one overlapping policy is defined for a single domain.
- **No free CPU resources are available in the pool.** In this case, the `priority` property specifies whether a resource can be dynamically moved from a lower-priority domain to a higher-priority domain on the same system. The priority of a domain is the priority specified by the DRM policy that is in effect for that domain.

*See, e.g.,* Exhibit D

([https://docs.oracle.com/cd/E37707_01/html/E29665/usingdynamicresourcemanagementpolicies.html](https://docs.oracle.com/cd/E37707_01/html/E29665/usingdynamicresourcemanagementpolicies.html), last accessed on February 1, 2021).

39.     Use of the Oracle VM Server for SPARC also preforms the second listed step of claim 1, which requires "receiving a user request to adjust the allocation of at least a portion of the plurality of resources using an application level administrative console that is resident within a logical partition in the logically partitioned computing system, that is disposed in an application level above that of an operating system resident in such logical partition, and that includes an interface with a user."

40.     The Oracle VM Server allows one to monitor and manage all of the virtual machines from a single browser user interface.



The following steps define the procedure to successfully install Oracle VM Server for SPARC 2.1 version:

*See, e.g.,* Exhibit E (https://docs.oracle.com/cd/E27363_01/doc.121/e27349/toc.htm#OPCTA130, last accessed on February 1, 2021). As explained in the Enterprise Manager Ops Center User's Guide (Exhibit C, above), "[w]ith Enterprise Manager Ops Center, you can monitor and manage all of the virtual machines from a single browser user interface."

41.     The Enterprise Manager Ops contains various options that enable the user to execute changes in the resource distribution among various domains. As described in Oracle's Enterprise Manager Cloud Control Cloud Administration Guide, users are able to "[s]pecify the resources they want to assign to a control domain."

7. Specify the resources that you want to assign to the control domain, according to the recommended minimum configuration. The remaining resources are then available for the logical domains.
- **CPU Model**: Select Whole-core to allocate the CPU resource in cores.
- **CPU Cores**: Enter the number of CPU core to be allocated to the control domain.
- **Max CPU Cores**: Enter the number of CPU cores that must be assigned to control domain.
- **Memory**: Enter the amount of memory required for control domain.

*See, e.g.,* Exhibit F (https://docs.oracle.com/en/enterprise-manager/cloud-control/enterprise-manager-cloud-control/13.4/emclo/dynamic-resource-provisioning-oracle-vm-server-sparc.html#GUID-E377C038-9F9B-468C-8F95-75C5928EA4C5, last accessed on February 1,

2021). Accordingly, the Enterprise Manager Ops Center is an application level administrative console, used to receive a user request to adjust the allocation of at least a portion of the plurality of resources, which includes an interface with a user.

42.     As decscribed in Oracle's Enterprise Manager Ops Center Virtualization Reference, the Enterprise Manager Ops Center is installed on the same server/system where the VM server agent is installed. Further it is installed in a Control Domain, which itself is a logical domain (partition) on the server (logically partioned computerd system).

For robust management, use the Oracle VM Server VC Agent to manage the domains. When you have an Oracle VM Server VC Agent installed on a managed system, you can use Oracle Enterprise Manager Ops Center or the Oracle VM Server for SPARC command line to perform configuration operations.

Metadata for all managed logical domains is stored in the Oracle VM Server's default local library. The agent runs on the control domain and monitors the configuration and reflects any changes on the configuration in its copy of the metadata. The Oracle VM Server VC Agent synchronizes the logical domain configuration defined on the control domain with the domain model view in .

* * *

You can install the agent during discovery, or at any time after discovery.

You have the following agent management options:

- **Oracle VM Server for SPARC Virtualization Controller Agent**: Manages the logical domains that are running on the Control Domain. The Oracle VM Server, Control Domain and operating system are reflected in the UI. Using this agent enables full monitoring and management actions for the Oracle VM Server system.

*See, e.g.,* Exhibit G (https://docs.oracle.com/cd/ops-center-12.4/doc.1240/e59972/GUID-11934399-9F77-4844-8C45-2943CE945B8F.htm#OCVRT8898, last accessed on February 1, 2021). Accordingly, the application level administrative console "is resident within a logical partition in the logically partitioned computing system, that is disposed in an application level above that of an operating system resident in such logical partition."

43.     Use of the Oracle VM Server for SPARC also performs the third listed step of claim 1: "determining resources of the logically partitioned computing system to adjust in order to satisfy the user request using the application level administrative console." As explained in the Oracle VM Server for SPARC 3.0 Administration Guide (Exhibit D), when a user provides instructions to issue a new partition, the Oracle VM Server determines and allocates the required resources for the creation of the new logical partition (or logical domain).

The behavior of the `priority` property depends on the availability of a pool of free CPU resources, as follows:

• Free CPU resources are available in the pool. In this case, `priority` property determines which DRM policy will be in effect when more than one overlapping policy is defined for a single domain.

• No free CPU resources are available in the pool. In this case, the `priority` property specifies whether a resource can be dynamically moved from a lower priority domain to a higher priority domain on the same system. The priority of a domain is the priority specified by the DRM policy that is in effect for that domain.

44.     Finally, use of the Oracle VM Server for SPARC also performs each of the limitations of the fourth listed step of claim 1, including those listed in 4A, 4B, and 4C. First, these limitations recite "utilizing the application level administrative console to access the partition manager through a resource allocation interface for the partition manager to adjust the determined resources of the logically partitioned computing system in order to satisfy the user request, wherein the user request is for the creation of a new logical partition and utilizing the application level administrative console." Oracle VM Server allows a user to use the Oracle Enterprise manager Ops Centre (i.e., administrative console) to access the Logical Domains Manager (i.e., partition manager) that are responsible for creation of new logical domain and for allocating the resources (i.e., adjusting resources). With Enterprise Manager Ops Center, a user can monitor and manage all of the virtual machines from a single browser user interface, as it provides the user with an interface that contains various options/capabilities that enables the user to execute changes in the resource distribution among various domain.

Oracle VM Server for SPARC technology is virtualization of SPARC servers. This technology is part of a suite of methodologies for consolidation and resource management for SPARC Chip Multi Threading (CMT) systems. Using this technology, you can allocate the various resources of the system such as memory, CPU threads, and devices, into logical groupings and create multiple discrete systems. These discrete systems have their own operating system, resources, and identity within a single system. By careful architecture, an Oracle VM Server for SPARC environment can help you achieve greater resource usage, better scaling, and increased security and isolation.

*See, e.g.,* Exhibit H

(https://docs.oracle.com/cd/E27363_01/doc.121/e27511/ftr_ovm_sparc_mgmt.htm#OPCFG3050

, last accessed on February 1, 2021).

45.     Among other things, a user is able to request the creation of new logical partitions (i.e., logical domain/Guest domain).

## How to Create and Start a Guest Domain

1. **Create a logical domain.**
   The following command would create a guest domain named `ldg1`.

```
primary# ldm add-domain ldg1
```

*See, e.g.,* Exhibit I

(https://docs.oracle.com/cd/E38405_01/html/E38406/createandstartguestdomaintask.html

, last accessed on February 1, 2021).

46.     Once a request is issued by the user, the Oracle VM server in collaboration with the Enterprise Manager Ops Center adjusts the resources for a partition. Where a new domain (i.e., logical partition) is requested, the partition manger with the guidance of the user identifies a profile that contains the configuration for the new logical domain, then allocates resources and implements (i.e., migrates) the configuration settings (i.e., profile data) to the target new logical domain.

## Creating Logical Domains

A logical domain is a virtual machine that has its own operating system and identity within a single server. Each logical domain can be created, destroyed, reconfigured, and rebooted independently, without requiring the server to be powered off. You can run a variety of applications in different logical domains to keep them independent for performance and security purposes.

Enterprise Manager Ops Center can create logical domains and install Oracle Solaris OS on them. Using profiles and deployment plans, you can to create more than one domain simultaneously and then save the configuration for future logical domains.

To create logical domains:

- Create Logical Domain Profile and Plan – You create a profile which defines the configuration of the logical domain. Using the profile, you create a deployment plan. You apply the plan on an Oracle VM Server to create logical domains. The logical domains do not have the Oracle Solaris OS. You then select each logical domain and apply an OS provisioning plan to install the OS. See Provisioning Logical Domains for provisioning OS on the logical domain.

- Configure and Install Logical Domains – This is a complex plan which contains deployment plans that create logical domains and install Oracle Solaris OS on them. You must have the required profiles and deployment plans available to create the complex plan.

## Creating Logical Domain Profiles

A logical domain profile contains the requirements and configuration for an entire logical domain, including the CPU Threads, memory, storage, and network details . When a deployment plan applies the profile, you create a logical domain. You must provision Oracle Solaris OS on each domain separately. As an alternative, you can include the logical domain profile along with an OS provisioning profile in a complex plan.

*See,*                    *e.g.,*                         Exhibit                    J

https://docs.oracle.com/cd/E18440_01/doc.111/e18415/chapter_vmsparc.htm#OPCUG387,    last accessed on February 1, 2021). Accordingly, each of the limitations set forth in steps 4A, 4B, and

4C—"identifying a logical partition profile to configure on the new logical partition; allocating at least a portion of the resources in the resource pool to the new logical partitions; and migrating data from the logical partition profile to the new logical partition"—is met.

47.     In violation of 35 U.S.C. § 271(a), Oracle has directly infringed the '091 Patent, either literally or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States, without license or authority, the Oracle VM Server for SPARC.

48.     In violation of 35 U.S.C. § 371(b), Oracle has also indirectly infringed the '091 Patent by actively inducing infringement of the'091 Patent by users of the Oracle VM Server for SPARC, knowing that their use of the Oracle VM Server for SPARC would and has directly infringed, either literally or under the doctrine of equivalents, the '091 Patent.

49.     In violation of 35 U.S.C. § 371(c), Oracle has also indirectly infringed the '091 Patent by offering to sell or license and/or selling or licensing with the United States its Oracle VM Server for SPARC for use in practicing one or more of the methods claimed in the '091 Patent, knowing that use of the Oracle VM Server by users would directly infringe, either literally or under the doctrine of equivalents, the '091 Patent.

50.     On information and belief, Oracle has known about the '091 Patent since at least about July 2014.     On information and belief, Oracle and the inventors of U.S. Patent No. 9,317,329 knew of the '091 patent and its contents when the U.S. Patent Application Publication No. 2009/027783 (the "'783 publication"), which was the publication of the application that became the '091 patent was cited by the examiner during the prosecution of the patent application that became U.S. Patent No. 9,317,239.

51.     On information and belief, Oracle has also been made aware of the '091 Patent at least by way of the '783 publication being cited by the examiner during the prosecution of the patent applications that became U.S. Patents Nos. 9,542,222 and 10,193,754.

52.     On information and belief, Oracle has also demonstrated its knowledge of the '091 Patent at least by citing the '783 publication during the prosecution of the patent applications that became U.S. Patents Nos. 9,916,153; 9,961,001; 10,250,519; 10,318,280; 10,394,550; 10,742,568; 10,853,055; and 10,853,056.

53.     Specifically, during the prosecution of U.S. Patent No. 10,193,754, the '783 publication was the basis of rejection under 35U.S.C. § 103 in an office action dated April 20, 2017.  Moreover, in its response to the office action, Oracle amended its claims in an attempt to distinguish its invention from the invention disclosed in the '783 publication in a reply dated August 18, 2017.

54.     Oracle, having learned the likelihood of infringement of the '091 Patent, nevertheless acted in way that infringed.

55.     Oracle's infringement of the '091 Patent has been and continues to be willful.

56.     As a result of Oracle's infringement of the '091 Patent, Ginegar has suffered and continues to suffer substantial injury and is entitled to recover all damages caused by Oracle's infringement to the fullest extent permitted by the Patent Act, together with prejudgment interest and costs for Oracle's wrongful conduct.

## <u>CLAIM II</u>
## <u>(INFRINGEMENT OF THE '783 PATENT)</u>

57.     Ginegar repeats and realleges the foregoing allegations as if fully set forth herein.

58.     The '783 Patent is valid and enforceable.

59.     Oracle has infringed and continues to infringe, both directly and indirectly, at least claim 1 of the '783 Patent, either literally or under the doctrine of equivalents.

60.     Claim 1 of the '783 Patent recites:

A method of defining Business Classes for modeling a business activity comprising the steps of:

[1] representing said business activity as an interaction between one or more Business Classes, wherein each Business Class is a generic definition of a Business Object and the Business Object is an instance of the Business Class;

[2] providing a graphical user interface (GUI) for linking desired ones of said Business Classes to generate relationships existing between said one or more Business Classes; and

[3] storing in a digital electronic format said one or more Business Classes as well as the relationships existing between said one or more Business Classes.

61.     At least use of the Oracle BPM Suite directly infringes at least claim 1 of the '783 Patent.

62.     Oracle BPM Suite consists of Business Process Composer for modeling processes and Business Process Management Studio for implementing the process. *See, e.g.,* Exhibit K https://docs.oracle.com/middleware/1213/bpm/bpm-develop/GUID-2D5EA36C-0BDC-4718-948D-EF33B072E28E.htm, last accessed on February 1, 2021.

63.     The below snapshot shows an example of modeling a loan approval process in Oracle BPM Suite. The Oracle BPM Suite provides a method of defining Business Classes, which are referred to by Oracle as "swimlanes." In the below example, the swimlanes are Loan Officer, Loan Processor, and Underwriter. Each Business Class is a generic definition of a Business Object (flow objects, such as "capture loan request" and "review loan application" in the below example) and the Business Object is an instance of the Business Class. The Oracle BPM Suite represents a business   activity   as   an   interaction   between   Business   Classes   (i.e.,   Swimlanes).



*See,*

*e.g.,* Exhibit L (https://docs.oracle.com/middleware/12211/bpm/bp-composer-user/GUID-5FD09D39-9EB9-49FA-9F16-5B4E0BC3D603.htm#BPMCU87304, last accessed on February 1, 2021).

64.     In the Oracle BPM Suite, swimlanes (i.e., Business Classes) help organize a process and appear as a horizontal line across the process editor and flow objects (i.e., Business Objects) must be placed in a swimlane. A business activity, in turn (such as loan processing), can be represented as the interaction between one or more Business Classes (this interaction being depicted by arrows in the above snapshot). Thus, the Oracle BPM Suite provides a method of defining Business Classes for modeling a business activity that performs the first listed step of claim 1 of the '783 Patent: "representing said business activity as an interaction between one or more Business Classes, wherein each Business Class is a generic definition of a Business Object and the Business Object is an instance of the Business Class."

65.     The Oracle BPM Suite also performs the second required step of claim 1, as it provides a graphical user interface (GUI):



See,                              e.g.,                              Exhibit                              M
(https://docs.oracle.com/cd/E15586_01/doc.1111/e15177/intro_bpcomposer_bpmcu.htm, last accessed on February 1, 2021). And the GUI allows linking desired ones of said Business Classes to generate relationships existing between said one or more Classes.



*See, e.g.,* Exhibit L. In this snapshot, three Business Classes (i.e, swimclasses) are shown, which are linked (as shown by the arrows) and work together and are dependent on each other (i.e., relationship) to complete the modeled business activity (approving a loan).

66.   The Oracle BPM Suite also performs the third step of claim 1's method, as it stores in a digital format said one or more Business Classes as well as the relationships existing between said one or more Business Classes. Oracle BPM model projects are compiled and stored in the Oracle BPM MDS Repository as a .EXP file. These models contain the relationship (the BPMN process), as well as the Business Classes (components).

Oracle BPM Studio enables you to create a BPM project based on a BPMN process stored in a BPA repository.

You can create and implement a BPMN process in BPA and then import it to Oracle BPM. This creates a BPM Project that contains the BPMN process and all of the components used to implement it, such as Human Tasks, Service Adapters and Mediators.

*See,                                 e.g.,*                                 Exhibit                 N

([https://docs.oracle.com/cd/E14571_01/doc.1111/e15176/bpa_bpel_bpmpd.htm#BPMPD419](https://docs.oracle.com/cd/E14571_01/doc.1111/e15176/bpa_bpel_bpmpd.htm#BPMPD419),

accessed        on        February        1,        2021);        *see        also*        Exhibit        O

(https://docs.oracle.com/middleware/1221/bpm/bp-composer-user/GUID-285906C6-F9FF-48B4-AC8D-CAE4A5352DD2.htm#BPMCU285, last accessed on February 1, 2021) (noting that one "can import a BPM 12c project that was previously exported and saved as a .EXP file").

67.     In violation of 35 U.S.C. § 271(a), Oracle has directly infringed the '783 Patent, either literally or under the doctrine of equivalents, by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States, without license or authority, the Oracle BPM Suite.

68.     In violation of 35 U.S.C. § 371(b), Oracle has also indirectly infringed the '783 Patent by actively inducing infringement of the'783 Patent by users of the Oracle BPM Suite, knowing that their use of the Oracle BPM Suite would and has directly infringed, either literally or under the doctrine of equivalents, the '783 Patent.

69.     In violation of 35 U.S.C. § 371(c), Oracle has also indirectly infringed the '783 Patent by offering to sell or license and/or selling or licensing with the United States its Oracle BPM Suite, for use in practicing one or more of the methods claimed in the '783 Patent, knowing that use of the Oracle BPM Suite by users would directly infringe, either literally or under the doctrine of equivalents, the '783 Patent.

70.     On information and belief, Oracle has known about the '783 Patent since at least about June 2009.  On information and belief, Oracle and the inventors of U.S. Patent Application No. 10/750,096 knew of the '783 Patent and its contents when the '783 Patent was cited in an Information Disclosure Statement during the prosecution of Application No.  10,750,096.  Further, on information and belief, the '783 Patent was cited during the prosecution of U.S. Patent Nos. 9,704,120 and 9,846,849, both of which were assigned to Oracle at the time the '783 Patent was cited.

71.     Oracle, having learned the likelihood of infringement of the '783 Patent, nevertheless acted in way that infringed.

72.     Oracle's infringement of the '783 Patent has been and continues to be willful.

73.     As a result of Oracle's infringement of the '783 Patent, Ginegar has suffered and continues to suffer substantial injury and is entitled to recover all damages caused by Oracle's infringement to the fullest extent permitted by the Patent Act, together with prejudgment interest and costs for Oracle's wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Ginegar respectfully requests that this Court enter judgment in its favor and grant the following relief against Oracle:

A.  That the Court enter judgment for Ginegar on all causes of actions asserted in this Complaint;

B.  That the Court enter judgment in favor of Ginegar and against Oracle for monetary damages to compensate it for Oracle's infringement of the Patents-in-Suit pursuant to 35 U.S.C.§ 284, including costs and prejudgment interest as allowed by law;

C.  That the Court enter judgment in favor of Ginegar and against Oracle for accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through the Court's entry of final judgment;

D.  That the Court award Ginegar treble damages in light of the Oracle defendants' willful infringement;

E.  That the Court enter judgment that this case is exceptional under 35 U.S.C. § 285 and enter an award to Ginegar of its costs and attorneys' fees; and

F.  That the Court award Ginegar all further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Ginegar respectfully demands a jury trial on all issues and claims so triable.

Dated:  February 9, 2021

*/s/ Jon B. Hyland*
Jon B. Hyland
State Bar No. 24046131
jhyland@hilgersgraben.com
HILGERS GRABEN PLLC
10000 N. Central Expwy.
Dallas, TX 75231
Tel: (972) 645-3097
Fax: (402) 413-1880


*Attorney for Plaintiff Ginegar LLC*